**Tami Kameda Sims** (SBN 245628)
tami.sims@kattenlaw.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310.788.4400
Facsimile: 310.788.4471

**Floyd A. Mandell** (admitted *pro hac vice*)
floyd.mandell@kattenlaw.com
**Julia L. Mazur** (admitted *pro hac vice*)
julia.mazur@kattenlaw.com
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe St.
Chicago, IL 60661
Telephone: 312.902.5200
Facsimile: 312.902.1061

Attorneys for Defendants
Electric Forest, LLC,
Madison House Presents, LLC, and
Insomniac Holdings, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ROOTS ROCK RAGE, LLC d/b/a SLOTH STEADY, a Michigan limited liability company, and NATHAN RUSSELL,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTRIC FOREST, LLC, a Delaware limited liability company, MADISON HOUSE PRESENTS, LLC, a Delaware limited liability company, and INSOMNIAC HOLDINGS, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. CV 19–1535 PA (GJSx)<br><br>**DEFENDANTS ELECTRIC FOREST, LLC, MADISON HOUSE PRESENTS, LLC AND INSOMNIAC HOLDINGS, LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[Fed. R. Civ. P. 12(c)]<br><br>Hon. Percy Anderson<br><br>[*Declaration of Chad Cheek and [Proposed] Order filed concurrently herewith*]<br><br>Date: July 8, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 9A |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 8, 2019 at 1:30 p.m., or as soon thereafter as may be heard, before the Honorable Percy Anderson, United States District Judge, in Courtroom 9A of the United States District Court for the Central District of California, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendants Electric Forest, LLC ("Electric Forest"), Madison House Presents, LLC ("Madison House"), and Insomniac Holdings, LLC ("Insomniac") hereby move for judgment on the pleadings dismissing the Complaint filed by Plaintiffs Roots Rock Rage, LLC d/b/a Sloth Steady ("Sloth Steady") and Nathan Russell (collectively, the "Plaintiffs") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Defendants move for judgment on the pleadings on the ground that their affirmative defense of substantial truth is a complete defense to all claims in the Complaint. The Complaint brings three claims, defamation <u>per se</u>, defamation <u>per quod</u>, and false light. The claims all arise from an allegedly defamatory statement, but for the reasons explained in the attached Memorandum of Points and Authorities, the facts in the allegedly defamatory statement are true. The defense of truth is a complete defense, and all counts in Plaintiffs' Complaint must be dismissed with prejudice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 17, 2019.

This Motion is based on this Notice of Motion and the attached Memorandum of Points and Authorities; the Declaration of Chad Cheek; the pleadings and papers on file in this action; and such other argument that may be presented to this court at or before the hearing on this Motion.

**DEFENDANTS' NOTICE AND RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

Dated:  June 3, 2019

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

By: */s/ Floyd A. Mandell*

Attorneys for Defendants Electric Forest, LLC, Madison House Presents, LLC and Insomniac Holdings, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Over the course of several years, Electric Forest and Sloth Steady entered into and amended a sponsorship agreement that made Sloth Steady an exclusive pin vendor at the Electric Forest music festival in Rothbury, Michigan. Plaintiffs allege the three Defendants harmed them through an innocuous factual communication from an Electric Forest employee regarding the status of Sloth Steady's relationship with the festival. The communication simply stated: "***Sloth Steady has confirmed an exclusive agreement for selling pins at the festival. They upgraded their sponsor arrangement to ensure exclusivity***." Plaintiffs' case depends on its allegation that this statement was false and damaged them. But the facts in the statement are true; Sloth Steady did execute an amendment to its agreement with Electric Forest, and by doing so, confirmed its exclusivity and upgraded its contractual arrangement with Electric Forest. Truth is a complete defense to defamation and false light claims. As a result, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

## II. Facts

### A. The Parties' Contractual Relationship

The Electric Forest musical festival (the "Festival") is a popular music festival held annually in the summer. (See Ex. 1, Complaint, Dkt. No. 1 ("Compl."), ¶ 9.) There is a commercial market at the Festival where artisans sell their creations. (See id. at ¶ 16.) Effective as of February 23, 2015, Electric Forest and Sloth Steady entered into a sponsorship agreement for the design, production, and sale of sponsored pins at the Festival. (See Declaration of Chad Cheek ("Cheek Decl."), Ex. A, "Sponsorship Agreement.") The Sponsorship Agreement required Sloth Steady to pay fees to Electric Forest and cover certain costs, and in exchange received a number of rights and benefits for the Festivals in 2016, 2017, and 2018, including being the ***exclusive pin sponsor*** at the Festival, gaining the ability to use certain Festival trademarks in connection with advertising its pins, and receiving a "high traffic" area

in which to sell the pins at the Festival. (See id. at Ex. A ¶¶ 2, 6(a), Sponsor Rights and Benefits for Event.)

The parties amended the Sponsorship Agreement twice. The first amendment accounted for adding an additional weekend to the length of the Festival and was effective as of February 16, 2017. (See id. Ex. B at B, the "First Amendment.") A second amendment, effective December 18, 2017, was entered into because Electric Forest and Sloth Steady "mutually agreed to amend Exhibit A of the First Amendment to *expand on [Sloth Steady's] involvement*" with the Festival in 2018. (See id. at Ex. C at C, ¶ 1, the "Second Amendment," emphasis added). The Second Amendment increased Sloth Steady's rights and obligations in various ways, including:

- Sloth Steady was entitled to 100% of the gross sales from sales of Official Festival Pins (see id. at Ex. C ¶ 1, Sponsor Sale of Pins);
- Sloth Steady had the right to design eight additional custom pins to produce, compared to three additional custom pins in the First Amendment (compare id. at Ex. B ¶ 2, Sponsor Sale of Pins, with Ex. C at ¶ 1, Sponsor Sale of Pins); and
- Sloth Steady was required to produce 2,400 pins, whereas there was no minimum in the First Amendment (compare id. at Ex. B ¶ 2, Sponsor Sale of Pins, with Ex. C ¶ 1, Sponsor Sale of Pins).

Importantly, both amendments affirmed the exclusive rights that Sloth Steady was purchasing by stating that "[Sloth Steady] shall be an exclusive pin sponsor of the [Festival]." (See id. at Ex. B ¶ 2; Ex. C ¶ 1.) Mr. Russell executed the Sponsorship Agreement and two amendments on behalf of Sloth Steady. (See id. at Ex. A p. 4; Ex. B p. 4; Ex. C p. 3.) He is the sole member and manager of Sloth Steady. (See Compl. ¶ 2.)

5

### B. The Allegedly Defamatory Statement

According to the Complaint, on January 9, 2018, the Festival's craft vending manager, Ms. Judy Heyman, communicated with another vendor of the Festival. (See Compl. ¶ 25.) The communication included the following statement: "***Sloth Steady has confirmed an exclusive agreement for selling pins at Electric Forest. They upgraded their sponsor arrangement to ensure exclusivity***." (Id.). Plaintiffs aver that this statement is "entirely false" (id., ¶ 28), and it is the basis of their defamation per se, defamation per quod, and false light claims (Counts I-III). (See id. at ¶¶ 22, 25, 27.)

### C. The January 10, 2018 Email

The Complaint goes on to allege that the day after Ms. Heyman's communication, on January 10, 2018, the Director of Branding, Partnerships and Marketing for Madison House sent an email to Ms. Heyman, which stated:

Judy,
We would like to address a couple issues that seem to have found their way online the last couple days regarding festival pin exclusivity.
1) The decision to take on an exclusive pin vendor for the Festival was made solely by festival management. This was not directed by any vendor or sponsor.
2) EF management chose to do this for the following reasons:
a) We have experienced problems with vendors selling unlicensed festival pins and artist pins, which causes legal issues
b) We want a generally more diverse marketplace on site
If there are any other concerns regarding this decision or the miscommunication that was provided previously, please forward them directly to me.
Darcy

(Id. at ¶ 31, the "January 10, 2018 Email.").

## III. Legal Standard

### A. The Standard for a Rule 12(b)(6) Motion to Dismiss Governs a Motion For Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, the court applies the same standard that is applicable to a motion under Rule 12(b)(6), which provides that a court may dismiss a complaint for failure to state a claim upon which relief can be granted. Chavez v. U.S., 683 F.3d 1102, 1108 (9th Cir. 2012); Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

To survive a motion for judgment on the pleadings, a plaintiff must have alleged "more than the mere possibility of misconduct." Wild v. NBC Universal, Inc., 788 F. Supp. 2d 1083, 1097 (C.D. Cal. 2011), aff'd sub nom. Wild v. NBC Universal, 513 F. App'x 640 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"). Although a plaintiff's allegations are generally taken as true, neither "'labels and conclusions'" nor "'naked assertions' devoid of 'further factual enhancement'" will suffice. Id. (quoting Twombly, 550 U.S. at 555 and 557) (internal brackets omitted).

### B. The Court Can Consider the Agreements between the Parties

Generally, a district court cannot consider material beyond the pleadings in a motion to dismiss without converting it to a motion for summary judgment. See Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). The Ninth Circuit has created an exception to this rule; if a complaint specifically refers to a document, and its authenticity is not question, a court may consider it on a motion to dismiss. See id. at 454 (finding district court did not err in considering deposition transcript and affidavit). This incorporation-by-reference doctrine applies to documents on which

7

**MEMORANDUM OF POINTS AND AUTHORITIES**

plaintiff's claims depend, even if the documents are not explicitly incorporated by reference in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (holding district court properly considered documents on which plaintiff's claims relied), superseded by statute on other grounds.

The Complaint references the Sponsorship Agreement and its subsequent amendments. (See, e.g., Compl. ¶¶ 18, 19.) Plaintiffs' allegations include its interpretation of the Sponsorship Agreement as amended. (See, e.g., id. at ¶¶ 18, 19, 28.) Most importantly, the allegedly defamatory statement references an "exclusive agreement for selling pins at Electric Forest" and a "sponsorship agreement." (Id. at ¶¶ 25, 27.) Consequently, Plaintiffs' claims require the analysis of the Sponsorship Agreement and its amendments. Thus, even though the Plaintiffs did not attach the Sponsorship Agreement and amendments, the Court can properly consider them without converting this Motion into a motion for summary judgment. See In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (finding district court properly considered SEC filings on motion to dismiss where plaintiff alleged their contents in her complaint), superseded by statute on other grounds.

## IV.  Argument

### A.  Plaintiff's Defamation Claims (Counts I–II) Must be Dismissed

#### 1.  A Defamation Claim Must be Dismissed if the Allegedly Defamatory Statement is True or if the Gist of the Statement is True

A claim of defamation involves the "'the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.'" Gilbert v. Sykes, 53 Cal. Rptr. 3d 752, 764 (Cal. Ct. App. 2007) (quoting Ringler Assocs. Inc. v. Maryland Casualty Co., 96 Cal. Rptr. 2d 136, 148 (Cal. Ct. App. 2000)) (dismissing defamation claim because statement that defendant thought her plastic surgery would be "subtle" had the same gist and sting as

1 plaintiff telling defendant she would look "natural" and did not want "too much
2 change."). In defamation actions under California law, truth is an absolute defense.
3 See Campanelli v. Regents of Univ. of Cal., 51 Cal. Rptr. 2d 891, 897 (Cal. Ct. App.
4 1996). It is "well settled" a defendant does not have to "'justify every word of the
5 alleged defamatory matter'" to establish the truth defense. Sipple v. Foundation for
6 Nat'l Progress, 71 Cal.App.4th 226, 244 (Cal. Ct. App. 1999) (quoting Kurata v. L.A.
7 News Pub. Co., 4 Cal.App.2d 224, 227). It is enough if the "imputation" of the
8 allegedly defamatory statement "is substantially true so as to justify the 'gist or sting'
9 of the remark." Campanelli, 51 Cal. Rptr. 2d at 897 (citing Emde v. San Joaquin Cty.
10 Cent. Labor Council, 143 P.2d 20 (Cal. 1943)).

11   For example, a court found a statement by defendant that plaintiff's entire
12 appearance was the result of cosmetic surgery was substantially true where plaintiff
13 had in fact had plastic surgery only on her breasts and buttocks. See Jackson v.
14 Mayweather, 217 Cal. Rptr. 3d 234, 254 (Cal. Ct. App. 2017), as modified (Apr. 19,
15 2017), review denied (June 28, 2017). The exaggeration as to the amount of plastic
16 surgery plaintiff had did not "create a different and negative effect on audience from
17 that which the truth would have produced." Id. Similarly, a California appellate court
18 found an article about a custody dispute not defamatory. See Sipple, 71 Cap. App. 4th
19 at 245. Although the article expanded on the specific incidents of physical and
20 emotional abuse testified about during the custody hearing, the article did not change
21 the gist or sting of the truthful in-court testimony. See id.

22       2.    The Allegedly Defamatory Statement is True

23   The mere labeling of Ms. Heyman's statement as "false" is belied by the
24 content of the Second Amendment, which was signed shortly before Ms. Heyman's
25 communication and establishes the truth of Ms. Heyman's statement: Sloth Steady
26 upgraded the rights and benefits associated with its sponsorship of the Festival and
27 confirmed exclusivity for selling pins at the Festival.
28

As a preliminary matter, there is no dispute that Sloth Steady contracted with Electric Forest in a Sponsorship Agreement to sell pins at the Festival. (See Compl. ¶¶ 8, 18; Answer (Dkt. No. 49) ¶¶ 8, 18.). Thus, the statement is not "entirely false" as Plaintiffs allege. (See Compl. ¶ 28.)

Further, the Second Amendment upgraded Sloth Steady's position in its contractual relationship with Electric Forest. The explicit purpose of the Second Amendment was to "expand" Sloth Steady's involvement in the Festival. (Cheek Decl., Ex. C ¶ C(1).) For the first time, Sloth Steady had the explicit right to 100% of the gross proceeds from sales of Official Festival Pins. The Second Amendment also more than doubled the number of custom pins Sloth Steady could design and set a minimum number of custom pins Sloth Steady had to provide. In other words, by agreeing to the Second Amendment, the parties raised the value of Sloth Steady's relationship with Electric Forest.

Additionally, the Second Amendment stated Sloth Steady "***shall be an exclusive pin sponsor***" of the Festival. (Id. at Ex. C ¶ 1, emphasis added.) By executing the Second Amendment on behalf of Sloth Steady, Mr. Russell ensured "exclusivity" for Sloth Steady as a pin vendor.[1] Indeed, Plaintiffs' allegations admit the agreement gave Sloth Steady exclusivity. (See, e.g. Compl. ¶¶ 18, 23.) Therefore, the gist of the allegedly defamatory statement was true, and Counts I and II must be dismissed with prejudice. See Carver v. Bonds, 37 Cal. Rptr. 3d 480, 495–96 (Cal. Ct. App. 2005) (holding statement that plaintiff was a "liar" was true because the term was broad enough to cover plaintiff, who had threatened to lie to the press about someone else and reneged on an offer to provide free orthotics); Campanelli v. Regents of Univ. of Cal., 51 Cap. Rptr. 2d 891, 897 (Cal. Ct. App. 1996) (upholding dismissal because plaintiff "admitted the essential accuracy of [defendant's] statement

---

[1] In its February 15, 2019 Order transferring this case to the Central District of California, the U.S. District Judge in the U.S. District Court for the Northern District of Illinois referred to the parties' agreement as an "**exclusivity agreement**." (See Dkt. No. 20, emphasis added.)

10

**MEMORANDUM OF POINTS AND AUTHORITIES**

that the players were 'in trouble psychologically'" through his allegations showing his players wanted to transfer because the plaintiff engaged in verbally abusive temper tantrums directed at them); Jackson, 217 Cal. Rptr. 3d at 254.

Finally, Plaintiffs' allegation that the January 10, 2018 Email "plainly admitted the falsity of Ms. Heyman's text message" (Compl. ¶ 31) is contradicted by the content of the email. The January 10, 2018 Email elaborated on the reasons for why there was an exclusive pin vendor for the Festival. It did not retract Ms. Heyman's statement. Nowhere in the email does it state that the amendment was not an upgrade, that Sloth Steady was not an exclusive pin vendor, or that Sloth Steady did not ensure exclusivity by signing the amendment—as opposed to some other entity signing a sponsorship agreement to fulfill the exclusive-pin-vendor role. The email did not admit the "falsity" of Ms. Heyman's communication or even reference the Second Amendment, in which Sloth Steady received upgraded benefits and ensured exclusivity by signing the Second Amendment.

### B. Plaintiffs' False Light Claim (Count III) Should Also be Dismissed

"California courts have largely collapsed 'false light' causes of action into libel." *Cort v. St. Paul Fire and Marine Ins. Cos., Inc.*, 311 F.3d 979, 987 (9th Cir. 2002). "When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." Eisenberg v. Alameda Newspapers, Inc., 88 Cal. Rptr. 2d 802, 823 (9th Cir. 1999) (citing Kapellas v. Kofman, 459 P.2d 912 (Cal. 1969); Selleck v. Globe Int'l, Inc., 212 Cal. Rptr. 838 (1985)).

Plaintiffs' false light claim is based on the same allegedly defamatory statement as its two defamation claims. (See, e.g., Compl. ¶ 98, 101, 102, 105.) Because the allegedly defamatory statement was truthful, Plaintiffs' claim for false light must also be dismissed with prejudice. See Bray v. Ventura Cty. Bar Ass'n, 55 F. App'x 459, 460 (9th Cir. 2003) (upholding dismissal of defamation and false light claims based

on truth defense); cf. Albert v. Williams, No. SACV 18-00448-CJC(JDEx), 2019 WL 77509, at *4 (C.D. Cal. Jan. 2, 2019) (dismissing plaintiff's defamation and false light claims based on the same publication because it was a non-actionable opinion).

**Conclusion**

Plaintiffs' case depends on an allegedly defamatory statement that was actually true. Sloth Steady did upgrade its agreement with Electric Forest by executing the Second Amendment, which expanded its rights and benefits and confirmed its exclusivity as a pin vendor. Given the veracity of the communication, allowing the case to proceed against the three Defendants would improperly extend the reach of defamation and false light claims. Accordingly, Defendants respectfully request that the Court dismiss all three counts in the Complaint with prejudice.

Dated: June 3, 2019

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

By: */s/ Floyd A. Mandell*
Attorneys for Defendants